J-S40028-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| VIZE ROGERS | : | |
| | : | |
| Appellant | : | No. 2057 EDA 2019 |

Appeal from the Judgment of Sentence Entered June 18, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0002752-2018

BEFORE:   SHOGAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                    **FILED OCTOBER 6, 2020**

Appellant, Vize Rogers, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for aggravated assault, simple assault, endangering the welfare of a child ("EWOC"), and reckless endangerment of another person ("REAP").[1] We affirm.

The relevant facts and procedural history of this case are as follows. Appellant is the father of A.T., a minor.  Appellant's girlfriend, A.J., is the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2701(a)(1), 4304(a)(1), and 2705, respectively.

mother of the victim, M.J.  Appellant and A.J. also have a child together, M.[2]

On November 27, 2017, Appellant was supervising A.T., M., and M.J., who

respectively were 11 years old, 2 years old, and 17 months old at the time.

While M.J. was in the care of Appellant that day, she suffered significant burns

to her legs and feet.  The Commonwealth charged Appellant with aggravated

assault, EWOC, and related offenses.

On March 11, 2019, Appellant proceeded to a bench trial, where the

Commonwealth presented the testimony of, *inter alia*, A.T. (Appellant's 11-

year-old daughter), A.J. (Appellant's girlfriend and M.J.'s mother), Matthew

Flanagan, and Dr. Marita Lindt.  A.T. testified that she lived with Appellant,

A.J., M., and M.J.  A.T. said that on November 27, 2017, Appellant was

watching the children at home while A.J. was at work.  A.T. explained that

Appellant placed M.J. in water in the bathtub and tasked her with washing M.J.

Then Appellant left the bathroom, cooked dinner in the kitchen, and had a

phone conversation with his lawyer.  While Appellant was on the phone, A.T.

asked for permission to go to the store and believed Appellant responded

affirmatively.  Before she left, A.T. saw M.J. in the bathtub.  The water was

warm and covered M.J.'s feet but not her thighs.  A.T. then went to the store

and returned approximately 15 to 20 minutes later.

---

[2] The victim and the child of Appellant and A.J. have the same initials.  For purposes of our disposition, we refer to the victim as M.J. and the couple's child as M.

A.T. testified that when she returned, Appellant ran into the bathroom and she followed. The faucet was running, and the bathtub was nearly full. A.T. said the water was very hot to the touch. M.J.'s whole body was red and she appeared drowsy. Appellant turned the faucet off, removed M.J. from the bathtub, and gave her water and a cold rag. Several minutes later, A.T. saw large blisters on M.J.'s lower legs and feet. Appellant called A.J. Hours later, A.J. called 911 when she returned home and saw M.J.'s injuries. (N.T. Trial, 3/11/19, at 10-26).

A.J. testified that she, Appellant, and the children lived together on the day at issue, and Appellant had frequently watched the children by himself. A.J. explained that the bathtub faucet has two dials, one each to control the release of hot and cold water, respectively. A.J. indicated that at time of the incident, M.J. was tall enough to reach the bathtub faucet and was able to feed herself with a spoon. She explained that Appellant called her at approximately 4:00 p.m. that day and first said, "I'm not watching this baby anymore." Appellant informed A.J. that M.J. had turned on the hot water while she was in the bathtub. A.J. then sent Appellant a text message asking him to send her a picture of M.J., but Appellant did not comply. A.J. testified that Appellant called her again at approximately 5:30 p.m. and asked her to buy cigarettes on her way home. Appellant also told A.J. that M.J. was having trouble breathing. When A.J. arrived home at approximately 6:00 p.m., she saw that M.J.'s feet and legs were missing patches of skin, and called 911.

Appellant yelled at A.J., because he did not want to call an ambulance out of fear that the authorities would take custody of the children. A.J. testified that M.J. was transported to St. Christopher Children's Hospital, where M.J. underwent a long stay, multiple surgeries, and physical therapy. As of trial, M.J. also required future treatments. (*Id.* at 26-55).

Matthew Flanagan testified that he is a paramedic and he responded to Appellant's home on the night of the incident. Mr. Flanagan said Appellant told him that hot water in the bathtub had burned M.J. Appellant also explained that the hot water in the apartment was too hot and that Appellant had previously discussed the issue with his landlord. (*Id.* at 55-61).

Dr. Marita Lindt is a child abuse pediatrician and the director of Child Protective Services at St. Christopher Children's Hospital. She testified that M.J.'s burns: (i) covered 20 percent of her body; (ii) included second-degree and third-degree burns; and (iii) indicated M.J. had been immersed in hot liquid. Dr. Lindt clarified that immersion meant M.J. was either placed into hot liquid or was in contact with liquid that became hot. (*Id.* at 65-123).

Appellant testified in his defense. Appellant said he was the children's primary caretaker and regularly supervised them. He said that when he placed M.J. in the bathtub on November 27, 2017, A.T. was in the bathroom too, and the water was warm but not running. Appellant asked A.T. to wash M.J. Appellant left the bathroom to cook dinner, and then he spoke to his lawyer on the phone. Appellant explained that while he was on the phone,

A.T. asked to go to the store, and he told her she could go later. When his phone conversation ended, Appellant heard M.J. crying in the bathroom. He said he entered the bathroom, saw the faucet was running, and removed M.J. from the bathtub. M.J. appeared to have trouble breathing and her legs were discolored. Appellant said he screamed for A.T. to call 911, but she was not in the apartment. Appellant admitted that when he saw A.T. had returned to the apartment later on, he did not ask her to call 911 at that time.

Appellant later noticed blisters on M.J.'s legs. Appellant called A.J. before 4:00 p.m., and told her M.J. had burned herself in the bathtub and needed to go to the hospital. Appellant conceded he did not comply with A.J.'s text message request for a picture of M.J. and/or that he did not see the text message until he checked his phone later that day. Appellant claimed he called A.J. again at approximately 5:30 p.m., but A.J. did not answer. Appellant denied asking A.J. to buy cigarettes. A.J. arrived home at approximately 6:00 p.m., saw M.J.'s condition, and called 911. Appellant and A.J. argued about calling 911. Appellant testified that A.J. offered to say she caused M.J.'s burns, but he insisted they should tell the truth so authorities would not remove the children from their custody. This disagreement led to Appellant yelling at A.J. while she was on the phone with a 911 operator. (*Id.* at 140-159).

Immediately following the conclusion of trial on March 11, 2019, the trial court convicted Appellant of aggravated assault, simple assault, EWOC, and

REAP. The court sentenced Appellant on June 18, 2019, to an aggregate term of six (6) to twelve (12) years' incarceration. On July 16, 2019, Appellant filed a timely notice of appeal. The court ordered Appellant on July 18, 2019, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellant complied on August 2, 2019.

Appellant raises one issue for our review:

> Whether there was insufficient evidence to support the *mens rea* element of the charge of aggravated assault 18 [Pa.C.S.A.] § 2702[(a)(1)], as there was no evidence that [Appellant] intentionally or knowingly immersed the child in hot water[?] As well, the evidence was insufficient to establish the *actus reus* element of recklessness under circumstances manifesting extreme indifference to the value of human life, as the unrefuted evidence of record is that [Appellant] placed the child in a tub of thigh high lukewarm water?

(Appellant's Brief at 4).

Appellant argues the evidence was insufficient to show he acted recklessly with indifference to human life. Appellant contends the only reasonable inference from the record evidence is that while M.J. was unattended in the bathtub she turned on the hot water. Appellant claims he could not control the maximum temperature of the water from the hot water heater to the bathtub's faucet. Appellant concludes this Court should reverse his conviction for aggravated assault, and vacate his judgment of sentence for that crime. We disagree.

When examining a challenge to the sufficiency of evidence:

> The standard we apply in reviewing the sufficiency of the

evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011).

The Pennsylvania Crimes Code defines aggravated assault, in relevant part, as follows:

**§ 2702.  Aggravated assault**

**(a) Offense defined.—**A person is guilty of aggravated assault if he:

(1)    attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

\*    \*    \*

18 Pa.C.S.A. § 2702(a)(1).  "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious,

permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."  18 Pa.C.S.A. § 2301.

Where the victim suffers serious bodily injury, the Commonwealth is not required to prove the defendant acted with the specific intent to cause the victim's injuries.  ***Commonwealth v. Nichols***, 692 A.2d 181, 185 (Pa.Super. 1997).  Rather:

> The Commonwealth need only prove appellant acted recklessly under circumstances manifesting an extreme indifference to the value of human life.  For the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue.

***Id.*** (internal citations and quotation marks omitted).  In other words, the Commonwealth must show the defendant acted with malice, which requires proof that "the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm. This state of mind may be inferred from conduct, recklessness of consequences, or the cruelty of the crime." ***Commonwealth. v. Payne***, 868 A.2d 1257, 1261 (Pa.Super. 2005), *appeal denied*, 583 Pa. 681, 877 A.2d 461 (2005) (internal citations and quotation marks omitted).

Instantly, the trial court addressed Appellant's sufficiency challenge as follows:

> M.J. sustained second and third degree burns to over 20% of her body.  The result of this injury is that baby M.J. had to undergo numerous skin grafts and physical therapy, is physically scarred, and requires constant medical care for

the foreseeable future. There can be no argument that the injuries suffered by M.J. satisfy the elements of serious bodily injury.

*    *    *

The record shows that there was one adult, Appellant, and three children ages 11, [2], and 17 months present in the home at the time of the incident. If you believe the testimony of Appellant, which this [c]ourt does not, Appellant placed [the] infant child in a bathtub full of water and left her in the care of his [11]-year-old daughter. Appellant's version of events directly contradicts what this [c]ourt believes to be the credible testimony of [A.T.] that Appellant left M.J. in the [bathtub], with water, unsupervised.

Further, Appellant's entire course of conduct shows sustained reckless behavior and a manifest indifference to human life starting from the moment he placed M.J. into the [bathtub] of water and continued when Appellant failed to call 911, when M.J. was so obviously injured. This along with his refusal to send [A.J.] pictures of M.J.'s injury and his nonchalant attitude on the phone after the incident, including his request that she stop for cigarettes prior to coming home, shows a level of callousness that this [c]ourt could not overlook.

It is also clear that Appellant placed M.J. in water and intentionally left her unsupervised. Leaving an infant alone, in any amount of water is enough for a reasonable person to believe that it could lead to serious bodily injury. The facts viewed most favorably to the verdict winner, in this case the Commonwealth, show a reckless course of conduct manifesting in extreme indifference to the value of M.J.'s life and intentionally leaving her in water, unsupervised, placed M.J. in an obvious risk of danger.

The evidence at trial shows beyond a reasonable doubt that Appellant's intentional and reckless conduct caused M.J. serious bodily harm. The evidence makes it reasonable for the factfinder to find Appellant guilty of Aggravated Assault. As such, Appellant's claim is without merit.

(Trial Court Opinion, filed 11/19/19, at 5-6) (internal citations omitted).

The record supports the trial court's analysis. At the outset, we will not disturb the court's credibility determinations in favor of the Commonwealth's witnesses. **See Hansley, supra**. Here, the Commonwealth presented evidence that on the day of the incident, Appellant placed M.J. in the bathtub and left her in the care of A.T., an 11-year-old child. Appellant then left A.T. and M.J. unattended in the bathroom, cooked dinner, and spoke to his lawyer. Appellant was so engrossed in those tasks that for approximately 15 to 20 minutes he did not check on M.J. or realize that A.T. had left home. Appellant's actions presented a risk that M.J. could be seriously injured due to a lack of adult supervision.

M.J.'s injuries were the result of her immersion in hot liquid, and would have occurred if she was placed in hot liquid or if hot liquid rose up around her. Thus, even if Appellant did not fill the bathtub with hot water first, M.J.'s injuries could have occurred if the bathtub filled with hot water after Appellant left the bathroom. Left without adult supervision, it is possible M.J. could have turned on the hot water dial and filled the bathtub with hot water. M.J. was tall enough to reach the faucet dials and it is possible she was dexterous enough to turn the dials, as she could feed herself with a utensil. Indeed, when Appellant returned to the bathroom, the bathtub water was very hot and nearly filled the bathtub. Appellant knew the hot tap water in his apartment was too hot, and was concerned enough about the water temperature to

discuss it with the landlord. Yet, Appellant did not watch M.J. while she was in the bathtub to ensure the water temperature was safe.

Further, for approximately two hours after Appellant observed that M.J. had trouble breathing and developed blisters on her legs and feet, he did not call 911 or seek medical attention or advice. Instead, Appellant told A.J. that he refused to take care of M.J. in the future, kept from her information about the seriousness of M.J.'s injuries, and asked her to buy cigarettes. Appellant also yelled at A.J. when she saw M.J.'s injuries for herself and called 911.

Under these circumstances, the evidence presented at trial shows Appellant consciously disregarded significant risks that M.J. would suffer serious harm when he left M.J. in the bathtub without adult supervision and/or completely unattended. *See Payne, supra*. After Appellant removed M.J. from the bathtub, he also disregarded that M.J. had suffered and continued to suffer serious bodily harm, in the form of respiratory distress and significant skin damage. *See id.* We agree with the trial court that, viewed in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient to convict Appellant of aggravated assault. *Id.*; *Nichols, supra*; 18 Pa.C.S.A. § 2702(a)(1). Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/06/2020